Good morning, your honors. Ray Brown from Wood. I'm sorry, Bohm, Francis, Cagle, and Aguilera on behalf of plaintiffs and appellants. Okay. And Lee Wood appearing, but counsel will argue for us. All right. So Mr. Brown will be arguing. All right. And is it Mireles? Mireles. Okay. Thank you. All right. Again, I'm not sure if you were here when we began, sir, but you have 20 minutes. If you want to reserve some time for rebuttal, we're more than happy to let you do that, but you kind of have to keep track of that yourselves. I don't serve as the timekeeper in these matters. So you have 20 minutes. You can allocate it the way you want to, but if you want rebuttal, kind of save some so that you can do it after we get through with Mr. Mireles and his co-defendants' argument. Thank you. Thank you, your honor. I'll be very brief, at least in my initial statements. Unless your honors have any questions, I think we've covered our arguments between the opening brief and the reply brief. The essence being that if you look historically, the holdings under Alice Chambers and Caterpillar and their progeny regarding the history of 301 preemption, 301 preemption only applies where a state law claim cannot be resolved without interpreting the collective bargaining agreement. That is not the case here. There is essentially no dispute as to the interpretation of the collective bargaining agreement here. The dispute regards the things that went on outside of the collective bargaining agreement. Go ahead. I have a question. With respect to Claim 1, which alleges the duty violated, the union violated its duty of fair representation, you're challenging the dismissal of that count only because they refused to admit evidence or permit comment on the burning of the jackets. Is that correct? That is correct. So what we have here is a non-except for the evidentiary basis on the merits, we have a holding that the union did not violate its obligation of fair representation. Is that right? That's correct, although we believe that that was affected dramatically by the lack of that evidence showing the motive to do that. Yes, but assuming we were to accept that, why isn't that an overall thing that covers the rest of it? You could take various things that happened and say, well, this violates this provision and that violates that provision, but basically aren't the other allegations all elements of the union's failure to perform its collective bargaining agreement, because it's due to deal fairly with its members? No, I don't believe they are. There is the duty to deal fairly with regard to the collective bargaining agreement, but then outside of that, there are the side negotiations that went on that separate and apart from the negotiation of the collective bargaining agreement constitute separate misrepresentations made towards the plaintiffs and appellants here that we think extend beyond just the duties to the members. But weren't all my problem with it is that weren't all these misrepresentations, as you say, a failure to disclose what was in the terms of the new agreement and so on? Aren't those all part and parcel of the union's alleged failure to perform its fair duty of fair representation? I understand Your Honor's point. We believe they extend beyond that. There is the duty of fair representation with regard to the negotiation of the collective bargaining agreement, but the misrepresentations made outside the confines of the collective bargaining agreement we think go beyond just a violation of the duty of fair representation. Counsel, this went to trial, but I have a question. In looking at the record, you had an in limine hearing, and Judge Stotner said, well, I'm not going to let rule now that you can put in the testimony about the jacket-burning incident, but because I don't know who the witnesses are going to be, I don't know the timing, and remember she said, I'm going to deny it without prejudice, and so you have an opportunity to make an offer of proof. Now, I can't find the offer of proof in the record. I think you failed to do that. Is that accurate? That is accurate, Your Honor. My argument in that respect with regard to the appeal is that although Judge Stotner did leave open that avenue that we could subsequently make an offer of proof, she did deny the motion in limine. As a practical matter, it was a very long, drawn-out trial that had large gaps in it, and the offer of proof never ended up happening, but it does not change the fact that the motion in limine was granted. The evidence was ---- It was without prejudice, so it's not a final ruling. It's not even something that we should hear. Well, further, you didn't try to introduce any evidence at trial. That is true. I mean, where she's going is there's no ---- the motion in limine was without prejudice. The offer of proof was never given, and you didn't even try to introduce any evidence. That would have been the way to perfect the appeal of have her make a decision. The ---- although it was without prejudice, we still interpreted it as a ruling barring it for the moment, allowing us the opportunity to revisit it, which we never did follow up on. You can characterize it any way you want, but it's not a final ruling. I understand what Your Honor is saying. The without prejudice, we believe, gave us the right to revisit it subsequently, but did not change the fact that it was granted, much the same way if ---- Well, Judge Stotler went on to say, well, you know, I need these additional things before me to make a reasoned ruling, and you never gave it to her. That is true, Your Honor. Let me ask you a question. It seems to me, and I'm far from saying that I'm an expert in this area, but it seems to me there's three ways that one could really be preempted from bringing these particular claims. One would be under a Garmon preemption, which would say the states can't regulate activity that's actually or arguably protected or prohibited by the NLRA. Another one would be the doctrine of fair representation would preempt it, because in that situation you must make a showing of additional duties beyond the normal duties of reunion employee relationship. And the last would be the 301 preemption, preempting the state law claims that are substantially dependent upon the analysis of the collective bargaining agreement. Now, my worry is somewhat similar to my colleagues' here, and that is that the first claim on a breach of duty of fair representation seems to hit right on the preemption of fair representation that we've got as a preemption. If I go to the breach of contract, I've got to look at the agreement to determine if it's a breach of contract, so I don't know how to get around 301. If I go to the breach of implied covenant of good faith and fair dealing, well, you can't even have such a breach if you don't have a breach of contract. And again, I've got to go back to the CBA to determine if I had a breach. If I go to negligent misrepresentation, while pretty fancily pled, it's only another common law tort which says, golly, this is not fair representation, which is nothing different. If I got to go to fraud and deceit, I can't even determine if that's it unless I look at the CBA, so 301 comes in again. If I go to emotional distress, there were outrageous acts, but the duty of fair representation, that's the only way to make them outrageous if they didn't do what they were supposed to do. And if I go to RICO, then the NLRA only preempts RICO when the underlying conduct is wrongful only by virtue of labor laws, as I understand Talbot versus Matthews. So, that's what we've got here. How do I give you relief? Well, the, although the, without going through each and every one of those claims. I did all the claims because you pled them all. Right. I just looked at my time remaining. I tried to come up with, how do I get to any of them to survive under the three ways to preempt? Well, if you look at the, at the ones that you, that Your Honor mentioned as potentially preempted by 301, the, the, and I'm not sure how to pronounce that, the Voilas claim that we cited in our reply brief, I think is instructive that the fact that you have to look at the collective bargaining agreement and make reference to it does not mean you have to interpret it and does not qualify for preemption under Section 301. In this case, there's no dispute as to what the collective bargaining agreement provided. The, the claims for breach of contract and breach of good faith are not dependent upon the interpretation of that collective bargaining agreement or the negligent misrepresentation claim. Those are dependent upon the interpretation of the representations made by Mr. Morellis, but they're not determined, determined by the interpretation of the collective bargaining agreement because that's not in dispute. Well, you say determined, but isn't it enough that you have to look to the collective bargaining agreement? The collective bargaining agreement may not control, but in order to evaluate the claims, you've got to look and say, well, what does the collective bargaining agreement say about this? I mean, you can't say that that case suggests that if you have to look at the collective bargaining agreement and interpret what it says to make sure whether you have a claim or not, that it is not preempted. That case doesn't say that. That case just says that if there is a claim that really the collective bargaining really doesn't really set to this agreement, but it might, then you might be out. But putting in it the duty of fair representation over and above that, which was my good colleague's first question out of the box, I'm having a tough time. And if you help me, that would be great. But then my other colleague hit you on the 403 issue, which was the only issue where I was a little worried, but I wanted to hear what you had to say there. But that's my worry. If you can't tell me how I get out from under all of those, then I'm pretty well stuck with what I have to do. Well, Your Honor, looking at the historical analysis provided by Alice Chambers and Caterpillar regarding the reason behind 301 preemption to begin with, it's to prevent differing State interpretations of collective bargaining agreements when Federal law would control. But in this case, where for a number of these claims, like the negligent misrepresentation and the breach of contract and the breach of good faith, there is no possibility of an improper or inconsistent interpretation of the collective bargaining agreement because there's no dispute as to the collective bargaining agreement. So if you look at the underlying reasons for 301 preemption. If there's no dispute, then there's no breach. Well, there's no dispute as to... It says I read the collective bargaining agreement that I can't find a breach if there's no dispute about what it says. Well, there is disputes as to what Mr. Morellis said, what representations he made, whether those were breached. Well, but that's the misrepresentation claim of the union as the organizer, as the negotiator. That's preempted under that. So where do I go? The... I'm not trying to preempt your answer. I'm just trying to tell you why I find myself boxed where I am and find a way out. Exactly what was tried out under count one. You were allowed your suit against the union. Correct. I'm not sure I understand the question. Well, you got to present to the court the issue of whether you were... the union fairly represented your people, and that was tried out. Correct. Now, and our complaint with regard to that claim is that evidence was kept out that would go to the motivation and resulted in the finding. Yeah, right. So that seems to me was the guts of your case. You didn't win it. And all the other issues either should have gone to the board or are preempted as being state law claims. I just don't see that there's anything left, frankly. That certainly was the guts of the claim that was left at the time of trial and that went before the jury. The rest of the claim was the claims that were obviously preempted that we think should have gone before the jury, that where interpretation of the collective bargaining agreement was not necessary to the resolution of those claims, and where Section 7 and 8 of the NLRA don't specifically protect or prohibit the conduct that was alleged. I am at a little under five minutes. I would like to reserve some time if that is... Thank you very much. Thank you. Good morning, Your Honors. Good morning. Your Honors have clearly read the briefs, and I know that you tell us that you do that, and it's good to know that. We agree with your assessment on the 403. The judge clearly left open the right to bring the issue back to her with an offer of proof. They chose not to do that, and that is under the Tennyson case, which is exactly on point. That is not an appealable order under 28 U.S.C. 1291, aside from the fact that there actually was no evidence on the issue that was admissible. On the preemption issue, while counsel has stated a number of times there was no dispute over the collective bargaining language, clearly there was, otherwise we wouldn't have been in trial. And that was, in fact, what the trial was about. The union believed that the language gave the employees certain rights and believed that it had negotiated certain rights for the employees, and that was the dispute. The employees said, no, you didn't, you didn't negotiate those rights, and so the evidence was that you misrepresented, that you lied, that it was different, that it was wrong, and that you didn't know what you were talking about. Every single one of the other claims requires or looks to the duty of fair representation. Every single one of them relates to the union's conduct as a union representative. There is no duty aside from that exclusive representation. That includes negotiation. That includes ratification. That includes every single one of these claims. And in the reply brief, and I asked for oral argument just so we could reply to the reply brief if necessary, in the reply brief there were a number of statements about all these undisputed facts. May I assure the Court that every one of those facts were disputed, and note that there was no citation to any record to show that those were undisputed. In fact, there was no citation to any record at all except for by us, and that was the Court's record. I'd be happy to answer any questions the Court has. I think that we have fully briefed the issues that you have. We have no questions. Thank you. Thank you, Your Honors. Your Honors, very briefly, the only thing I want to point out is that the fact that I have argued here that there was no dispute regarding the interpretation of the Collective Bargaining Agreement is not to say that there was no dispute regarding the Collective Bargaining Agreement. The dispute was on the negotiation and ratification and whether the union acted in the best interests  doesn't that in turn require at least considering what the Collective Bargaining Agreement says, because the Collective Bargaining Agreement helps determine what the union's obligations are in this particular situation. It does. However, there was no dispute as to what the specific terms of the Collective Bargaining Agreement  were. Isn't there a dispute, though, as to what the significance of those terms are? I don't believe so. There's, in terms of the legal significance, whether they constitute a breach of the duty there is, but with regard to the significance in terms of what the terms provided for and what they imposed upon the members or granted to the members, I don't believe there was any dispute. So the only dispute turns on a determination of whether or not that constituted a breach of the duty. Well, are you saying that this case can be determined without even looking at the Collective Bargaining Agreement? No. You have to look at it. You have to look at it, but... Why isn't that enough to invoke preemption? Because the question of when... If you've got to look at it, that means you've got to decide what it means and what its significance is. And isn't that a question for the labor entities rather than for the district court? I don't believe so, Your Honor. Under the Voylis case and its progeny, the fact that you have to make reference to it, that the rights being discussed are related to the Collective Bargaining Agreement is not sufficient for preemption. The ultimate outcome of this case did not turn on what the interpretation of the provisions of the Collective Bargaining Agreement were because those terms were not in dispute. It's not that we were saying under the Collective Bargaining Agreement we were guaranteed these rights and the other side was saying, no, they weren't. The Collective Bargaining Agreement actually provided for this. There was no dispute as to what the Collective Bargaining Agreement provided. The dispute was as to whether the union acted in good faith in negotiating and ratifying the Collective Bargaining Agreement and whether Mr. Morales acted in the best interests or had a side deal that went against the best interests of the members. I gather you agree that this case could not be decided without even mentioning or considering the Collective Bargaining Agreement. I do agree with that. And the question, I tell you, the legal issue is whether that connection is enough to invoke preemption. Correct, Your Honor. And I believe under the law it's not. You say no and your opponent says yes. Correct. And the district court said yes. Yes. That is accurate. Well, and the breach of the duty of fair representation, which went to court, really not talking about preemption, though one could have argued a doctrine of fair representation even as to that. But the good judge said, hey, we're going to have a trial on that, and so all we have left then is the 403 claim. Correct. Thank you, Your Honor. Thank you. This case is Case 06-56005, Alvarez v. Morales, I hope. And so that case is now submitted. Thank you very much for your argument. And Case 0656067 has been removed from the calendar, Owings v. British Petroleum. Therefore, this court is adjourned.
judges: Fletcher, Smith, Friedman